**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4028-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

P.S.C.,[1]

     Defendant-Appellant.

_____

> Submitted April 29, 2020 – Decided May 15, 2020
>
> Before Judges Koblitz and Gooden Brown.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 17-07-0954.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Alicia J. Hubbard, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials pursuant to <u>Rule</u> 1:38-3(c)(5).

PER CURIAM

Defendant appeals from his April 18, 2019 conviction, arguing that the court erred in issuing a February 8, 2019 order affirming the prosecutor's denial of his application for admission to the pretrial intervention program (PTI), N.J.S.A. 2C:43-12. Defendant was charged for behavior occurring on January 22, 2017, in an indictment alleging third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d); third-degree terroristic threats, N.J.S.A. 2C:12-3(a); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a).

The recommendation of the PTI director and the assistant prosecutors' submissions to the trial court reflect the following facts. On January 22, 2017, defendant entered a church where approximately fourteen congregants were present. After observing defendant sitting in an area reserved for choir members, the pastor approached defendant and asked him to move. Defendant relocated, and the pastor then heard screams. He turned around "and saw defendant screaming the 'F-word'" from the back of the church. When the pastor approached him to quiet him down, defendant pointed a seven-inch blade knife at the pastor. The pastor later said he wanted to help defendant.

The police arrived when defendant was running away.  Defendant did not initially comply with the order to stop but then "suddenly stopped" and "turned to face [the officer] in an aggressive manner."

The officer drew his service weapon and ordered defendant to the ground. Defendant complied and was arrested.  A pat down revealed no weapons.  In response to the officer's question about whether he had a knife, defendant said he "threw it in a bush," where it was later found. The pastor told the police that defendant smelled of alcohol.

In August 2017, the assistant prosecutor assigned to the case offered a plea offer to defendant, which included: "Defendant to apply to [PTI], if eligible and subject to mental health evaluation."  The PTI director, who also serves as the Criminal Division manager, denied defendant's PTI application almost a year later, in July 2018, on the basis that "[a]n offense of such nature, that also violates the sanctity of the church, is something that needs to be deterred."

In a six-page letter sent almost three months later, a different assistant prosecutor adopted the PTI director's findings and concluded "that the facts of this case warrant heightened caution" and are "beyond alarming."  In denying defendant's admission into PTI, the assistant prosecutor cited to five of the seventeen factors, noting the nature and facts of the offense, N.J.S.A. 2C:43-

12(e)(1) to -(2), the needs and interests of the public, N.J.S.A. 2C:43-12(e)(7), the value of supervisory treatment, N.J.S.A. 2C:43-12(e)(14), and that the harm to society by forgoing prosecution would outweigh the benefit to society of defendant's admission to PTI, N.J.S.A. 2C:43-12(e)(17).

Defendant appealed from the denial of PTI to the Law Division. In December 2018, after a third assistant prosecutor was heard, the court remanded the matter "for a better statement of reasons."[2] The court asked the assistant prosecutor to address "the level of supervision provided to someone who [is] in PTI," given the assistant prosecutor's position that insufficient supervision was available, and whether, in addition to the pastor, there were other victims.

The assistant prosecutor's revised statement of reasons did not address the court's questions, although more analysis was provided for the applicable N.J.S.A. 2C:43-12(e) factors. The parties reconvened in February 2019, when the court deferred to the assistant prosecutor, issuing an order denying defendant's appeal of the denial of his PTI application.

---

[2] During this hearing, the court repeatedly asked defendant to stop interrupting the proceeding. The court emphasized that considering the parties were discussing the possibility of defendant's substance abuse and mental health issues, the fact defendant could not control himself, despite repeated instruction, "[is] a concern."

In exchange for dismissing the remaining charges, defendant pled guilty to fourth-degree resisting arrest in February 2019. On April 12, 2019, defendant was sentenced to two years of probation and, in addition to financial penalties, was ordered to remain fifty yards away from the church.

Defendant raises the following single, multi-part issue on appeal:

> POINT I:  THE TRIAL COURT, ALLOWING AND EVEN ENCOURAGING THE STATE TO IGNORE APPLICABLE FACTORS LISTED IN N.J.S.A. 2C:43-12(E) AND TO CONSIDER INAPPROPRIATE FACTORS, ERRED IN FINDING THAT THE STATE'S DENIAL OF DEFENDANT'S APPLICATION FOR [PTI] WAS NOT AN ABUSE OF DISCRETION.
>
> FACTORS ONE, TWO, TEN AND TWELVE
>
> THE NATURE OF THE OFFENSE AND FACTS OF THE CASE, WHETHER OR NOT THE CRIME IS OF AN ASSAULTIVE OR VIOLENT NATURE, AND HISTORY OF USE OF PHYSICAL VIOLENCE TOWARDS OTHERS.
>
> FACTOR THREE
>
> THE MOTIVATION AND AGE OF THE DEFENDANT.
>
> FACTOR FOUR
>
> THE DESIRE OF THE COMPLAINANT OR VICTIM TO FOREGO PROSECUTION.

A-4028-18T1

FACTORS FIVE AND SIX

THE EXISTENCE OF PERSONAL PROBLEMS WHICH MAY BE RELATED TO THE CRIME AND FOR WHICH SERVICES MAY BE PROVIDED MORE EFFECTIVELY THROUGH SUPERVISORY TREATMENT, THE PROBABILITY THAT THE CAUSES OF THE BEHAVIOR CAN BE CONTROLLED BY TREATMENT AND THE LIKELIHOOD THAT THE CRIME IS RELATED TO A SITUATION THAT WOULD BE CONDUCIVE TO CHANGE THROUGH PARTICIPATION IN SUPERVISORY TREATMENT.

FACTORS SEVEN, ELEVEN, FOURTEEN AND SEVENTEEN

THE NEEDS AND INTEREST OF THE VICTIM AND SOCIETY AND WHETHER OR NOT THE CRIME IS OF SUCH A NATURE THAT THE VALUE OF SUPERVISORY TREATMENT WOULD BE OUTWEIGHED BY THE PUBLIC NEED FOR PROSECUTION, WHETHER OR NOT PROSECUTION WOULD EXACERBATE THE PROBLEM [THAT] LED TO THE CRIMINAL ACT, WHETHER OR NOT THE HARM DONE TO SOCIETY BY ABANDONING CRIMINAL PROSECUTION WOULD OUTWEIGH THE BENEFITS TO SOCIETY FROM CHANNELING AN OFFENDER INTO A SUPERVISORY TREATMENT PROGRAM.

FACTORS EIGHT AND NINE

THE EXTENT TO WHICH THE APPLICANT'S CRIME CONSTITUTES PART OF A CONTINUING PATTERN OF ANTI-SOCIAL BEHAVIOR AND THE APPLICANT'S RECORD OF CRIMINAL AND

6

PENAL VIOLATIONS AND THE EXTENT TO WHICH HE MAY PRESENT A SUBSTANTIAL DANGER TO OTHERS.

### I. Standard of Review.

The scope of judicial review of a prosecutor's rejection of PTI is "severely limited." State v. Negran, 178 N.J. 73, 82 (2003).[3] Whether to permit diversion

---

[3] Prosecutors and program directors shall consider in formulating their recommendation of an applicant's participation in a supervisory treatment program, among others, the following criteria:

(1) The nature of the offense;

(2) The facts of the case;

(3) The motivation and age of the defendant;

(4) The desire of the complainant or victim to forego prosecution;

(5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;

(6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment;

(7) The needs and interests of the victim and society;

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

A-4028-18T1

(9) The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others;

(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) The history of the use of physical violence toward others;

(13) Any involvement of the applicant with organized crime;

(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and

(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

The prosecutor and the court, in formulating their recommendations or decisions regarding an applicant's participation in a supervisory treatment program, shall give due consideration to the victim's position on whether the defendant should be admitted.

[N.J.S.A. 2C:43-12(e); see also R. 3:28(4)(a) to -(c).]

A-4028-18T1

to PTI "is a quintessentially prosecutorial function." State v. Wallace, 146 N.J. 576, 582 (1996). "Prosecutorial discretion in this context is critical for two reasons. First, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options." State v. Nwobu, 139 N.J. 236, 246 (1995) (quoting State v. Kraft, 265 N.J. Super. 106, 111 (App. Div. 1993)). Courts, therefore, give prosecutors "broad discretion to determine if a defendant should be diverted" to PTI. State v. K.S., 220 N.J. 190, 199 (2015).

If a "reviewing court determines that the 'prosecutor's decision was arbitrary, irrational, or otherwise an abuse of discretion . . .' the reviewing court may remand to the prosecutor for further consideration." Id. at 200 (quoting State v. Dalglish, 86 N.J. 503, 509 (1981)). An abuse of discretion is manifested when defendant proves "that the [PTI] denial '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'" State v. Lee, 437 N.J. Super. 555, 563 (2014) (quoting State v. Bender, 80 N.J. 84, 93 (1979)). "A remand to the prosecutor affords an opportunity to apply the standards set forth by the court 'without supplanting the prosecutor's primacy in

determining whether [PTI] is appropriate in individual cases.'" K.S., 220 N.J. at 200 (quoting Dalglish, 86 N.J. at 514).

A reviewing court may, however, overturn a prosecutor's rejection of PTI when a defendant "clearly and convincingly establish[es] that the prosecutor's decision constitutes a patent and gross abuse of discretion.'" State v. Nicholson, 451 N.J. Super. 534, 553 (App. Div. 2017) (quoting State v. Watkins, 193 N.J. 507, 520 (2008)). "In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of . . . clearly subvert[ed] the goals underlying [PTI]." State v. Roseman, 221 N.J. 611, 625 (2015) (quoting State v. Bender, 80 N.J. 84, 93 (1979)) (in spite of the presumption against admission for the crimes charged, ordering defendant be admitted to PTI in light of the "extraordinary and unusual" circumstances, the passage of time, and the patent and gross abuse of the prosecutor's discretion). In other words, a defendant satisfies this heightened standard upon establishing not only an abuse of discretion, but also that the prosecutor's decision "ha[d] gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention." Watkins, 193 N.J. at 520 (quoting Wallace, 146 N.J. at 582-83). "Where a

defendant can make that showing, a [reviewing] court may admit a defendant, by order, into PTI over the prosecutor's objection."  Roseman, 221 N.J. at 625.

## II. Amenability to PTI Supervision.

Because defendant was not clinically assessed for mental illness and lacks a history of physical violence, defendant takes issue with the prosecutor's "suggest[ion] that he could not be adequately supervised through PTI."  Because the parties disagreed as to whether PTI only provides "low level supervision," which would inadequately address defendant's mental health needs, the court remanded the matter for the assistant prosecutor to brief what level of supervision PTI provides.  The assistant prosecutor failed to address this question and merely reasserted the assumption that a "mental health probation officer . . . would be more equipped than a PTI probation officer to address his mental health needs."

"Because mental health issues impact [the PTI] assessment, the prosecutor is required to consider a defendant's mental illness."  K.S., 220 N.J. at 202.  Such "considerations bear directly on the applicant's suitability to respond to short-term rehabilitation while subject to PTI supervision."  Negran, 178 N.J. at 85.

The purpose of PTI is to provide eligible defendants "with opportunities to avoid ordinary prosecution by receiving early rehabilitative services or

supervision." N.J.S.A. 2C:43-12(a)(1).  Although the statute does not define the level of supervision provided, our court rules explain:

> The deterrence of criminal behavior in many cases requires intensive work: counseling, psychotherapy, drug-abuse prevention and control, employment placement.  Programs in these cases should be measured against available treatment facilities and the time constraints of PTI.  For other defendants, however, no more than a supervised pretrial probationary period may be necessary when no extensive need for rehabilitative services can be discerned.
>
> [Pressler & Verniero, Current N.J. Court Rules, comment on Guideline 1(d) to R. 3:28 (2020).]

A defendant who requires extensive services, therefore, may be better suited for probation rather than PTI.  See ibid.

Here, no such discernment of what level of supervision defendant requires was made.  The assistant prosecutor noted that defendant was willing to undergo a mental health evaluation, yet no evaluation was completed.  Without an expert evaluation of defendant's mental health or a report on the level of supervision available through PTI, the prosecutor could not evaluate defendant's amenability to PTI supervision.

### III. Defendant's Motivation and Age.

Defendant argues the assistant prosecutor failed to consider his motivation and age.  See N.J.S.A. 2C:43-12(e)(3).  He emphasizes that at the time of the

12

incident, he was twenty-eight years old and had no criminal record, which demonstrates "he was not deeply ingrained in some criminal milieu or unlikely to respond positively to instruction and intervention" but rather "open to life-changing guidance."

In the assistant prosecutor's revised statement of reasons, she noted defendant's age and explained that the defendant's motivation behind the incident was unknown. Defendant smelled of alcohol, but without a mental health evaluation, the motivation was unclear.

## IV. Victims' Input.

Defendant argues the assistant prosecutor failed to consider "[t]he desire of the complainant or victim to forego prosecution" when denying his PTI admission. See N.J.S.A. 2C:43-12(e)(4). The statute requires: "The prosecutor and the court, in formulating their recommendations or decisions regarding an applicant's participation in a supervisory treatment program, shall give due consideration to the victim's position on whether the defendant should be admitted." N.J.S.A. 2C:43-12(e). Here, the victim's position was not considered. Neither the pastor nor the congregants were asked about their desires.

Although the pastor told the police that he wished to help defendant, the trial court stated that because the pastor may have "a conflict between his responsibility or his duty to God and . . . his civic duty," it "[does not] know how much weight the State should give to that."  Just as jurors may not be dismissed based on the stereotype that their religious beliefs will cause them to extend mercy, State v. Fuller, 182 N.J. 174, 201-03 (2004), defendant asserts that the "dismissive treatment" of the pastor's opinion due to his assumed religious beliefs and role as a clergyman, violates defendant's right to due process.

Defendant also argues the prosecutor erred by "imput[ing] to certain victims an intent they never voiced."  Despite the court asking the assistant prosecutor to seek out the congregants, this was never done.  Instead, the assistant prosecutor emphasized that because "the people present [at the church] appeared afraid and fled," they likely would oppose defendant's admission into PTI.  Such an assumption is not warranted.

"The PTI statute and court rule . . . recognize the importance of a victim's concerns in PTI determinations."  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 475 (2018).  The victim must be "afforded an opportunity to state his or her view," and although "not dispositive, the victim's view must be

14

considered when a defendant's application for PTI is determined, and conditions of PTI are imposed." Id. at 476. Here the victims' views were not considered.

## V. Defendant's need for supervision.

Defendant argues that despite the prosecutor recognizing that defendant may have mental health or alcohol addiction issues that contributed to the incident, the prosecutor "refused to even contemplate the idea that [his] issues could be addressed through PTI." He correctly notes that the prosecutor's reasoning that no evidence exists of the "likelihood that [his] crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment" is contrary to the prosecutor's view that his serious mental health issues preclude him from PTI. See N.J.S.A. 2C:43-12(e)(6).

The prosecutor acknowledged in the revised statement of reasons that "[w]hile it appears that there is no rational explanation for defendant's bizarre behavior on January 22, 2017, the State has no information that defendant has been diagnosed with any mental health disorder or substance abuse issue." See N.J.S.A. 2C:43-12(e)(5).

The prosecutor inconsistently also argued that defendant could not be adequately supervised by a PTI probation officer because he had such serious mental health issues.

## VI. Defendant's Lack of Criminal Record.

Defendant argues that although he has no prior charges or convictions, the assistant prosecutor erroneously considered two other interactions with law enforcement. On an unspecified date before this incident, police received a call reporting an argument in defendant's apartment. When they arrived, defendant admitted he was upset and broke something. In July 2018, defendant was arrested when police discovered an outstanding warrant for his arrest due to unpaid traffic tickets after they saw him waiting outside a closed liquor store.

A prosecutor must consider whether "the applicant's crime constitutes part of a continuing pattern of anti-social behavior," N.J.S.A. 2C:43-12(e)(8), and "[t]he applicant's record of criminal and penal violations," N.J.S.A. 2C:43-12(e)(9). Our Supreme Court clarified that "[p]roper consideration requires more than a prior arrest when the identified information is reviewed in connection with the rejection of a [PTI] application." K.S., 220 N.J. at 199. "[P]rior dismissed charges may not be considered for any purpose." Ibid.

Certainly, then, behavior that did not result in an arrest on criminal charges may not be considered.

The assistant prosecutor claimed these incidents were not considered in denying defendant's application, but rather included to provide some "background." She expressly stated that "significant weight" was given to defendant's "absence of any prior criminal or disorderly persons convictions." The prosecutor's claim that it gave great weight to defendant's lack of convictions does not compensate for the improper consideration of this "background" material.

When the prosecutor's reasons for denial are arbitrary, irrational, or otherwise an abuse of discretion, but not a patent or gross abuse of discretion, we normally remand for further consideration. Here, the prosecutor was given a chance to reframe its objections and yet did not properly consider the applicable statutory criteria. Also, similar to the situation in Roseman, the passage of time since defendant was indicted is considerable. The prosecutor was given a second chance in the trial court to reconsider the expressed reasons for rejecting defendant from PTI. Had that second chance not been timely given, we would be inclined to remand to the prosecutor to conduct a mental health

17

evaluation and consult the victims before reconsidering defendant's admission into PTI.

Under the present circumstances, we remand for the court to consider the appropriate remedy, informed by defendant's behavior while on probation for more than one year and given the passage of more than three and one-half years since the offense occurred. If the court believes a mental health assessment and polling of the victims would still be helpful, it may be ordered. If the court finds that admission into PTI with credit for time spent on probation is appropriate, it may do so.[4]

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] PTI may last for three years. N.J.S.A. 2C:43-13(c). We state no opinion as to whether defendant may be directed to spend longer under PTI supervision than his probationary sentence imposed after a guilty plea.